Matter of Lenowitz (2018 NY Slip Op 02468)





Matter of Lenowitz


2018 NY Slip Op 02468


Decided on April 11, 2018


Appellate Division, Second Department


Per Curiam



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on April 11, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
MARK C. DILLON
JOHN M. LEVENTHAL
CHERYL E. CHAMBERS
ROBERT J. MILLER, JJ.


2016-07104 

[*1]In the Matter of Ronald A. Lenowitz, admitted as Ronald Alan Lenowitz, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Ronald A. Lenowitz, respondent. (Attorney Registration No. 1350867)



DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. By decision and order on application dated October 25, 2016, this Court authorized the Grievance Committee to institute and prosecute a disciplinary proceeding against the respondent, based upon the acts of professional misconduct set forth in a verified petition dated July 7, 2016; directed the respondent to serve and file an answer to the verified petition within 20 days of service upon him of a copy of the order; and referred the issues raised by the verified petition and any answer thereto to John P. Clarke, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 5, 1975, under the name Ronald Alan Lenowitz.



Catherine A. Sheridan, Hauppauge, NY (Michele Filosa of counsel), for petitioner.
McDonough & McDonough, LLP, Garden City, NY (Chris McDonough of counsel), for respondent.



PER CURIAM


OPINION & ORDER
.The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a verified petition dated July 7, 2016, containing four charges of professional misconduct. After a preliminary conference held on April 18, 2017, and a hearing conducted on June 20, 2017, the Special Referee submitted a report dated August 25, 2017, in which he sustained all four charges. The petitioner now moves to confirm the report of the Special Referee and impose such discipline upon the respondent as the Court deems appropriate. In an affirmation in response dated October 3, 2017, the respondent's counsel raises no opposition to the petitioner's motion, and requests the matter be concluded with a sanction no greater than a public censure.
Charge one, as amended, alleges that the respondent misappropriated funds entrusted to him, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:
1. At all times relevant herein, the respondent maintained an attorney special account at JP Morgan Chase Bank denominated "Ronald A. Lenowitz Attorney At Law, Special Account," account no. ending 1854 (hereinafter the Special Account).
2. Between December 31, 2010, and December 4, 2014, the respondent maintained and utilized the Special Account for client funds entrusted to him as a fiduciary.
3. In or about 1979, Joseph Burton, a New York State resident at the time, executed a last will and testament in Queens County, New York, naming his sister, Madeleine Burton, a New York State resident, as the sole beneficiary of his estate.
4. In or about 1979, Joseph Burton relocated to Belgium, where he resided until his death on November 16, 2006.
5. At the time of his death, Joseph Burton's assets were located in both the United States and Belgium.
6. Under Belgian law, the will Joseph Burton executed in the United States was not recognized as an admissible will, and he was considered to have died intestate in Belgium.
7. A Belgian attorney, Eric Herinne, was appointed by the Belgian Probate Court as Temporary Administrator of the estate of Joseph Burton.
8. Joseph Burton was survived by, among others, his sister, Madeleine Burton, whom he had named the sole beneficiary of his estate in his will executed in the United States in or about 1979.
9. On or about July 16, 2007, Madeleine Burton died.
10. In or about July 2007, the respondent was retained to commence a probate proceeding in the Surrogate's Court, Queens County, involving the estate of Madeleine Burton.
11. In or about November 2007, the respondent filed a petition in the Surrogate's Court on behalf of the estate of Madeleine Burton.
12. Between in or about November 2007, and in or about April 2010, the respondent communicated with Eric Herinne, the Belgian attorney handling the Joseph Burton estate.
13. On or about April 22, 2010, the respondent faxed a letter to Eric Herinne, providing, among other things, wiring instructions for the Special Account and stating the following:
"Please have the balance of the [Joseph Burton] Estate Funds sent to . . . my attorney special account, along with an accounting of all Estate Assets remitted for filing with the New York Surrogate's Court."
14. On or about December 31, 2010, the sum of $180,740 (hereinafter the Burton estate funds) was wired by Eric Herinne to the respondent's Special Account.
15. The respondent was relieved of his duties in the administration of Madeleine Burton's estate by order of the Surrogate's Court, Queens County, dated May 8, 2012, which also appointed the Public Administrator of Queens County as administrator of the estate.
16. On or about December 4, 2014, the respondent attended a conference before the Surrogate's Court, at which time he was presented with evidence of his receipt of $180,740 by wire transfer in December 2010 from Eric Herinne.
17. On or about December 4, 2014, the respondent issued a check against the Special Account for $180,740, payable to the estate of Madeleine Burton, and remitted the check to the Public Administrator.
18. On or about February 19, 2015, the respondent remitted a cashier's check, payable to the estate of Madeleine Burton for $65,172.24, to the Public Administrator, representing accrued interest on the $180,740 for four years at the rate of nine percent annually.
19. Between on or about December 31, 2010, and December 4, 2014, the respondent was required to maintain and preserve in the Special Account $180,740 in connection with the Burton matter.
20. Between on or about December 31, 2010, and December 4, 2014, the balance on deposit in the Special Account fell below the principal amount of $180,740 on 17 dates, with a low on May 2, 2012, of $65,802.90.
21. Between December 31, 2010, and December 4, 2014, at the same time client funds were on deposit in the Special Account, he improperly maintained personal funds in the Special Account, including earned legal fees.
22. Between December 31, 2010, and December 4, 2014, the respondent improperly made numerous ATM withdrawals from the Special Account, and paid business and personal expenses from the account.
Based upon the foregoing, charge two alleges that the respondent commingled client funds with his own funds in the Special Account; charge three alleges that the respondent made cash withdrawals from the Special Account; and charge four alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of rules 1.15(a) and (e), and [*2]8.4(h) of the Rules of Professional Conduct, respectively (22 NYCRR 1200.0).
The respondent, by counsel, submitted an answer dated November 28, 2016, largely admitting the factual specifications underlying the charges, but denying that he had engaged in professional misconduct. By virtue of a stipulation executed in February 2017, among other things, the respondent admitted all of the factual specifications, as amended, supporting the charges.
At the hearing, the respondent testified that he was not aware that $180,740 had been wired to his Special Account on December 31, 2010. In fact, he claimed that he did not learn of the wire transfer until the court conference before the Surrogate's Court on December 4, 2014. That day, the respondent went to his bank and confirmed that the funds had been wired to the Special Account, and he issued a check to the Public Administrator in the sum of $180,740. Although the respondent maintained a ledger system for the Special Account, he could not explain why he did not notice the wire deposit, but admitted that he neither checked his balances nor reconciled his accounts against the bank statements. Nevertheless, unaware of his receipt of the Burton estate funds, he believed that the excess funds in the account were his funds, as it was his custom to leave fees on deposit in the Special Account after ensuring payments to clients. After reviewing rule 1.15 of the Rules of Professional Conduct (22 NYCRR 1200.0), the respondent now keeps a running balance in the Special Account ledger, and reconciles his account.
Based upon the evidence adduced, the Special Referee sustained all charges, and found that the respondent misappropriated the Burton estate funds, commingled client funds with his own funds, and made improper cash withdrawals from the Special Account. With respect to mitigation, the Special Referee found that the respondent testified forthrightly, and he credited respondent's claim that he was unaware of the wire deposit of the Burton estate funds into the Special Account. Further, the Special Referee remarked that while "it is difficult to believe that one would not notice the deposit of $180,740.00 in an account . . . I would attribute that oversight in this matter to have been one of negligence rather than intentional." However, the Special Referee concluded that "[w]hile accepting his explanations as proof of the fact that he did not intentionally misappropriate any of the funds wired to the account, his testimony clearly established a violation of Rule 1.15(a) relative to the maintenance and accounting for clients['] funds."
In view of the evidence adduced and the respondent's admissions, we find that the Special Referee properly sustained the charges. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.
In seeking a sanction no greater than a censure, the respondent's counsel contends, inter alia, that the respondent's misconduct was not intentional, that he admitted his misconduct, took immediate corrective action by remitting the funds once alerted to his error, and paid interest on the funds at the rate of nine percent. In mitigation, among other things, the respondent offers evidence of his good character, his efforts to institute remedial bank and bookkeeping measures, his cooperation with the petitioner's investigation, and his limited disciplinary record in 42 years of practice, having received a single admonition, which was issued approximately 20 years ago for engaging in a conflict of interest.
Notwithstanding the mitigation advanced, the respondent routinely commingled personal funds with client funds, made improper cash withdrawals and disbursements for personal and business expenses, and failed to properly reconcile the Special Account. The respondent's disregard of the rules governing the proper maintenance of an attorney's special account was not isolated, and resulted in the misappropriation of the Burton estate funds.
Under the totality of the circumstances, notwithstanding the mitigating factors advanced by the respondent and the request that a public censure be imposed, we find that a suspension from the practice of law for a period of two years is warranted (see Matter of Farkas, 133 AD3d 81).
MASTRO, J.P., DILLON, LEVENTHAL, CHAMBERS and MILLER, JJ., concur.
ORDERED that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,
ORDERED that the respondent, Ronald A. Lenowitz, admitted as Ronald Alan Lenowitz, is suspended from the practice of law for a period of two years, commencing May 11, 2018, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 11, 2019. In such application (see 22 NYCRR 1240.16, [*3]691.11), the respondent shall furnish satisfactory proof that (1) during said period he refrained from practicing or attempting to practice law, (2) he has fully complied with this order and with the terms and provisions of the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15), (3) he has complied with the applicable continuing legal education requirements of 22 NYCRR 691.11(a), and (4) he has otherwise properly conducted himself; and it is further,
ORDERED that the respondent, Ronald A. Lenowitz, admitted as Ronald Alan Lenowitz, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see 22 NYCRR 1240.15); and it is further,
ORDERED that, pursuant to Judiciary Law § 90, during the period of suspension and until such further order of this Court, the respondent, Ronald A. Lenowitz, admitted as Ronald Alan Lenowitz, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Ronald A. Lenowitz, admitted as Ronald Alan Lenowitz, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Aprilanne Agostino
Clerk of the Court